UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:06CV-104-EHJ

HUBERT GOODMAN                                                                                    PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff Hubert Goodman seeks judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). The Court referred the matter to the United States Magistrate Judge, who reviewed the Fact and Law Summaries and submitted Findings of Fact, Conclusions of Law and Recommendation. Plaintiff filed specific written objections in a timely manner. After de novo review of the subject matter of those objections, the Court is of the opinion that the decision of the Commissioner should be reversed and this matter should be remanded for award of benefits.

## PROCEDURAL HISTORY

On August 28, 2003, Claimant filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he became disabled as of March 25, 2003. After a hearing, Administrative Law Judge Craig ("ALJ") determined that plaintiff's severe impairments prevented him from performing any of his past relevant work, but that he retained the residual functional capacity for a significant range of light work. This became the final decision of the defendant Commissioner when the Appeals Council denied review on June 20, 2006.

1

## STANDARD OF REVIEW

The task of this Court on appellate review is (1) to determine whether the administrative proceedings were flawed by any error of law, and (2) to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## BACKGROUND

Plaintiff was previously a recipient of social security disability benefits in the 1990s for a seizure disorder following removal of a benign brain tumor. With the use of dilantin, an anti-seizure medication, he was able to return to work. However, his treating physicians suspect that long-time use of dilantin caused considerable decay in his teeth and gums, which likely caused bacterial endocarditis and the resulting renal infarction/failure. Diagnoses of chronic renal failure, splenic infarction, hypertension, severe obstructive sleep apnea, chest pain, diabetes mellitus, calcified pulmonary nodules, probable subcarinal adenopathy followed soon after the cardiac infection. As a result of these myriad conditions, the claimant suffers from severe fatigue, weakness, shortness of breath, blurred vision, nausea, numbness in the upper extremities, chest pain and depression, symptoms which he contends are disabling. Treating physician Dr. Wan agrees. Dr. Wan indicates that as a result of his impairments, Mr. Goodman would be unable to work due to severe fatigue characterized by tiredness, weakness, and shortness of breath (Tr. 364-365).

ARGUMENT AND OBJECTIONS

I. TREATING PHYSICIAN'S OPINIONS

Plaintiff contends that the ALJ committed legal error by rejecting the opinion of the treating physician. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." Rogers v. Commissioner of Social Sec., 486 F.3d 234, 241 (6th Cir. 2007), quoting from 20 C.F.R. § 416.927(d)(2). In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician, and underlined as well the fact that the courts must hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to *state clear reasons* for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

Plaintiff's treating physician, Dr. Richard Wan, wrote on March 17, 2004, that his patient suffers from generalized fatigue, chest pain, weakness, shortness of breath, kidney damage, renal insufficiency, sleep apnea, hypertension, and epilepsy. Dr. Wan stated that because of the combination of these problems, Mr. Goodman has difficulty concentrating; he has fatigue; and he is unable to stay awake during the day: "His fatigue reaches such a level that it requires him to lay down and rest between two and three hours out of an eight-hour day." Tr. 364. On April 30, 2004, Dr. Wan wrote that Mr. Goodman's history of renal failure, diabetes mellitus, hypertension, low back pain, gastroesophageal reflux disease and depression required him to have someone to stay with him. Tr. 495. In October of 2005, Dr. Wan completed a Statement of Ability to do Work-

Related Activities, opining that Mr. Goodman could lift less than 10 pounds on a frequent basis, could stand less than two hours in a work day, had manipulative limitations that would permit only occasional fine manipulation or feeling, and suffered from visual impairments. Tr. 529-531.

The ALJ's justification for rejecting the specific restrictions stated by Dr. Wan's March 17, 2004 opinion is as follows:

> [T]he letter dated March 17, 2004 is inconsistent with Dr. Wan's treating notes and does not appear to have been written by him. The undersigned notes the limitations are not supported by objective medical findings.

Tr. 17. By providing only these unsupported statements, the ALJ has left the Court in a difficult position.[1] On the one hand, the ALJ addressed the opinion, but on the other hand, the Court cannot say that the ALJ offered "clear reasons" for his wholesale rejection of Dr. Wan's opinion. That is, the ALJ offered no explicit references that might explain his perception of "inconsistency" between the opinion and the treating notes, nor is such "inconsistency" obvious. The ALJ's assertion that Dr. Wan's opinion is not supported by "objective medical findings" is also puzzling, in light of the fact that the record includes the results of renal function tests, sleep apnea tests, etc. Because of the ALJ's silence regarding the evidentiary support for his statements, the Court concludes that his evaluation of the treating physician's opinions was marred by legal error.

This was no merely technical error, in light of the medical evidence of record. The March 2004 opinion summarizes several years of treatment notes that mention the variety of problems stated in the rejected opinion. In addition, Dr. Wan has provided other specific opinions regarding

---

[1] The Court is puzzled concerning the ALJ's assumption that Dr. Wan did not personally write the letter he signed. Just as an ALJ's opinion may be legal and proper even if it is drafted by another, the Court is aware of no legal principle attributing validity only to opinions that come from the doctor's own hand.

4

Mr. Goodman's limitations.  On April 30, 2004, Dr. Wan wrote "to whom it may concern" that Mr. Goodman's history of renal failure, diabetes mellitus, hypertension, low back pain, gastroesophageal reflux disease and depression required him to have "someone to stay with him."  Tr. 495.  In October of 2005, Dr. Wan completed a Statement of Ability to do Work-Related Activities, opining that Mr. Goodman could lift less than 10 pounds on a frequent basis, could stand less than two hours in a work day, had manipulative limitations that would permit only occasional fine manipulation or feeling, and suffered from visual impairments.  Tr. 529-531.

Even if the ALJ had provided support for a determination that the treating physician's opinion was not entitled to *controlling* weight, that determination would not justify casting the opinion aside as worthless:  "In all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding."  Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007).

II.  DESIGNATION OF IMPAIRMENTS AS "NON-SEVERE"

Thus, the ALJ's legal error with respect to the treating physician's opinion would require remand for additional proceedings.  However, analysis of additional objections convinces the Court that further proceedings are unnecessary.  The ALJ determined that Mr. Goodman's sleep apnea was not a "severe" impairment because it imposed no more than a minimal limitation on ability to work.  Tr. 17.  Ordinarily, the significance of finding an impairment "severe" or "non-severe" is limited to whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis.  If *any* impairment is found severe, the analysis is taken to the next step, such that the mere failure to classify a second impairment severe is irrelevant, *so long as the actual impact of that impairment is considered as part of the whole*.  In this case, however, the ALJ failed to consider the

5

impact of the "non-severe" impairments as part of the whole. In his March 2004 opinion, Dr. Wan stated that Mr. Goodman's sleep apnea, combined with the other problems resulting in fatigue, caused his patient to fall asleep during the day, sometimes unexpectedly: "He has come to my office, sits down and falls asleep." Tr. 364. This is precisely the type of information a treating physician is best able to supply, and it is indicative of more than "minimal" interference with work activities.

III.   CREDIBILITY DETERMINATION

Additional error appears with respect to the ALJ's credibility determination. In matters of credibility, the ALJ's findings are to be accorded great weight and deference. "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is *charged with the duty of observing a witness's demeanor and credibility*." Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997) [emphasis added] .

An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the

claimant's testimony as not credible, he or she must state reasons for doing so. <u>Auer v. Secretary</u>, 830 F.2d 594, 595 (6th Cir. 1987).

In this case, the ALJ found Mr. Goodman only partially credible. His reasons for rejecting plaintiff's statements regarding the severity of the symptoms, however, appear to be based on a misreading of the record. For example, the ALJ rejected claimant's statement that his arms and legs "go numb," stating that "this complaint is not found in the office notes of his treating physician." Tr. 18. Dr. Wan's Statement of Ability to do Work-Related Activities clearly identifies numbness as a problem imposing limitations (Tr. 531). Furthermore, numbness was consistently recorded in systems reviews Dr. Wan conducted over a long period of time; reference to the numbness is found in office notes dated August and October of 2002, January and March of 2003, and March of 2004. Tr. 396, 404, 418, 432, 483, and 485. Similarly, the record does not support the ALJ's suggestion that Mr. Goodman's allegation of dizziness "is not substantiated in the medical evidence." Tr. 18. The Statement of Ability to do Work-Related Activities explicitly referred to syncope as a hazard for Mr. Goodman. Tr. 530. Thus, the "inconsistencies" on which the ALJ relied to justify rejecting Mr. Goodman's credibility do not seem to hold up to a close reading of the record.

## CONCLUSION

If the record is fully developed, all essential factual issues have been resolved, and the record adequately establishes entitlement to benefits, remand for further proceedings serves no legitimate purpose. <u>See</u>, e.g., <u>Abbott v. Sullivan</u>, 905 F.2d 918 (6th Cir. 1990). We believe this is one of those rare cases in which "proof of disability is strong and evidence to the contrary is lacking." <u>Faucher v. Secretary</u>, 17 F.3d 171, 176 (6th Cir. 1994). This is not a case in which reasonable minds could come to contrary conclusions. Rather, when the matters disregarded in error

are restored to the body of evidence, and the record is then viewed as a whole, the multiplicity of impairments and limitations is clearly established, and remand would serve no legitimate purpose.

An order in conformity has this day entered.